**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROMEO GYAMERAH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>DEVEREUX FOUNDATION d/b/a DEVEREUX ADVANCED BEHAVIORAL HEALTH,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

ROMEO GYAMERAH ("Plaintiff"), individually and on behalf all others similarly situated ("Class Members"), brings this action against DEVEREUX FOUNDATION d/b/a DEVEREUX ADVANCED BEHAVIORAL HEALTH ("Devereux" or "Defendant") and alleges as follows upon personal knowledge as to Plaintiff's own actions, upon Plaintiff's attorneys' investigation, facts of public record, and upon information and belief as to all other allegations.

**INTRODUCTION**

1.      Plaintiff brings this Class action against Defendant for its failure to properly secure and safeguard Plaintiff's and Class Members' personally identifiable information ("PII") and protected health information ("PHI") (together "Private Information"), resulting in a devastating data breach.

2.      On or about November 6, 2025, through November 9, 2025, "The Gentleman," a ransomware and data extortion threat group, infiltrated Devereux's data systems and "copied files without permission" (the "Data Breach").[1]

---

[1] *See* https://www.devereux.org/site/SPageServer/?pagename=data_notice_2025 (last accessed July 30, 2026).

1

3.    Defendant learned of the Data Breach when they identified suspicious activity within certain systems on their computer network on November 9, 2025.[2]

4.    The information contained in the data that was unauthorizedly exfiltrated in the Data Breach included Plaintiff's and Class Members' demographic information, including but not limited to, their names and dates of birth, as well as their Social Security numbers, driver's license or state identification numbers, United States Alien registration numbers, taxpayer identification numbers, digital/electronic signatures, financial account information, payment card information, medical information, and health insurance information.[3]

5.    The Data Breach has affected thousands of individuals, each of whom had their PII and PHI compromised in the Data Breach.

6.    In response to the Data Breach, Defendant sent notices to individuals on January 8, 2026,[4] and posted a Notice of Data Event[5] (the "Notice of Data Event") on their website, which states in relevant part:

> The Devereux Foundation ("Devereux") is providing notice of an event that may impact the privacy of information related to certain individuals. Devereux stores information related to its current, and former, employees, clients, donors, payors, and business partners for business purposes, consistent with applicable law and retention policies.
>
> *What Happened?* On November 9, 2025, Devereux identified suspicious activity within certain systems on our computer network. We took prompt and extensive action to isolate our systems, assess the security of our network, and launched an investigation to determine the nature and scope of the event. The investigation determined that an unauthorized actor gained access to certain systems from November 6, 2025, to November 9, 2025, and copied files without permission.
>
> As part of the investigation, Devereux undertook a thorough review of the files to determine whether any sensitive information was contained therein and to whom the

---

[2] *See id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

information relates. Recently, this review was completed and determined that information related to individuals was included in the impacted files.

***What Information Was Involved?*** The categories of information identified in the review varies by individual, but could include some combination of name, date of birth, Social Security number, driver's license or state identification number, US Alien registration number, taxpayer identification number, digital/electronic signature, financial account information, payment card information, medical information, and health insurance information. Please note, there are no indications of actual or attempted identity theft or fraud resulting from this incident.

***What Devereux is Doing.*** Devereux takes the security of our network and information in our care very seriously. When we became aware of the event, we quickly engaged third-party specialists to assist in ensuring the security and operations of our systems and investigating the nature and scope of the activity. Devereux also reported the event to law enforcement and are cooperating with their investigation. While the investigation was ongoing, on January 8, 2026, we began notifying individuals and notified relevant regulators. Devereux reviewed our procedures and policies and is implementing additional training for employees to reduce the likelihood of a similar event from occurring in the future. As an added precaution, Devereux is offering impacted individuals access to complimentary credit monitoring through Experian.

7.      Defendant solicited, collected, used, and derived benefits from the PII and PHI, but failed its duty to Plaintiff and Class Members to take precautions reasonably calculated to keep Plaintiff's and Class Members' Private Information secure, resulting in present harm and a lifetime of ongoing risk to identity theft and their information appearing on the dark web.

8.      Defendant is liable for the Data Breach and the foreseeably consequent unlawful access to Plaintiff's and Class Members' PII and PHI, including out-of-pocket expenses, and those associated with reasonable mitigation measures that Plaintiff and Class Members may employ, and other damages.

9.      Plaintiff brings this action on behalf of all persons whose PII and PHI was compromised in the Data Breach from Defendant's failure to: (i) adequately protect the PII and PHI of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected

PII and PHI using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach.

10.     Plaintiff, individually and on behalf of Class Members, asserts the following claims against Defendant: (I) Negligence; (II) Negligence *Per Se*; (III) Breach of Implied Contract; (IV) Unjust Enrichment; (V) Breach of Confidence; and (VI) Declaratory Judgment.  Plaintiff and Class Members seek damages as well as injunctive relief.

## PARTIES

11.     Plaintiff ROMEO GYAMERAH ("Plaintiff") is an adult individual and at all relevant times herein has been a resident of Massachusetts, Worcester County. Plaintiff was an employee of Defendant's from 2015 through 2018. Plaintiff brings this suit in his personal capacity and on behalf of all Class Members.

12.     Defendant DEVEREUX FOUNDATION d/b/a DEVEREUX ADVANCED BEHAVIORAL HEALTH ("Devereux") is a nonprofit corporation headquartered in Pennsylvania having its principal place of business at 444 Devereux Drive, Villanova, Pennsylvania 19085.

## JURISDICTION

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy in this Class action exceeds $5,000,000, exclusive of interest and costs, and there are over 100 members of the putative Class.

14.     This Court has personal jurisdiction over Defendant because Defendant operates in and/or is incorporated in this District.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is deemed to reside in this District, a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendant regularly conducts business in this District.

## FACTUAL BACKGROUND

### A.    *Plaintiff and Data Breach General Allegations.*

16.    Defendant is one of the nation's largest nonprofit organizations, providing behavioral health services since 1912 and employing nearly 6,500 employees.[6] Additionally, Eastern Pennsylvania is Devereux's most concentrated and diverse region, with 90 locations servicing patients.[7]

17.    Plaintiff and Class Members are and/or were employees, clients, donors, payors, and business partners.[8] As a condition of employment with and/or receiving services from and/or doing business with Devereux, Plaintiff and Class Members provided their PII and PHI to Defendant.

18.    In doing so, Plaintiff and Class Members entrusted Defendant with their sensitive PII and PHI with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to confidentially and securely maintain such personal information from unauthorized access.

19.    The PII and PHI Defendant obtained, collected, and stored included, but was not limited to, Plaintiff's and Class Members' their names, dates of birth, physical addresses, spousal information, Social Security numbers, driver's license or state identification numbers, United States Alien registration numbers, taxpayer identification numbers, digital/electronic signatures,

---

[6] *See* https://www.devereux.org/site/SPageServer/?pagename=pa_about (last accessed July 30, 2026).

[7] *See id.*

[8] *See* https://www.devereux.org/site/SPageServer/?pagename=data_notice_2025 (last accessed July 30, 2026).

financial account information, payment card information, medical information, and health insurance information.[9]

20.     By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties to protect same, and knew that it was responsible for protecting the Private Information from unauthorized disclosure.

21.     Plaintiff's and Class Members' PII and PHI, entrusted to Defendant on the mutual understanding that Defendant would protect it against disclosure, was targeted, compromised, and unlawfully accessed in the Data Breach.

22.     Defendant has a duty to implement reasonable data security practices necessary to protect sensitive, confidential and personal information entrusted to it because it is reasonably foreseeable that exposure of Plaintiff's and Class Members' PII and PHI to unknown and criminal third parties would injure Plaintiff and Class Members through identity theft and other long-ranging financial risks.

**B.     *Defendant Breached its Duty to Plaintiff's and Class Members' PII and PHI.***

23.     On or about November 6, 2025 through November 9, 2025, Defendant was the target of a cybersecurity incident that compromised its data network.

24.     The PII and PHI exfiltrated in the Data Breach includes individuals' names, dates of birth, Social Security numbers, driver's license or state identification numbers, US Alien registration numbers, taxpayer identification numbers, digital/electronic signatures, financial account information, payment card information, medical information, and health insurance information.[10]

---

[9] *See id.*
[10] *Id.*

25.    Upon information and belief, the stolen PII and PHI was accessible, unencrypted, unprotected, and susceptible to acquisition and/or exfiltration by unauthorized individuals.

26.    As a healthcare organization, Defendant knew or reasonably should have known of its obligation to comply with healthcare industry standards for data security and federal and state laws obligating Defendant to protect this highly sensitive and personal PII and PHI and provide adequate notice of any unauthorized disclosure.

27.    However, Defendant failed to provide timely and adequate notice to impacted individuals about the Data Breach, leaving patients and employees uncertain and unequipped on how to safeguard themselves, placing the burden on Plaintiff and Class Members to protect themselves from identity theft and fraud.

28.    The Data Breach was a direct result of Defendant's failure to implement and follow basic security procedures to protect Plaintiff's and Class Members' PII and PHI.

29.    Upon information and belief, Defendant funds its data security measures from general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

30.    Defendant recognizes it has a duty to protect PII and PHI. In accordance with Defendant's HIPAA Notice of Privacy Practices,[11] Defendant is required to keep patients' Private Information confidential and to only disclose it for authorized purposes. Further, Defendant is legally responsible for promptly notifying patients of qualifying data breaches that may have compromised the privacy or security of patients' Private Information. Defendant did not meet either requirement.[12]

---

[11]  *See*  https://www.devereux.org/site/SPageServer/?pagename=hipaa  (last accessed July 30, 2026).
[12] *See id*.

31.     At all relevant times, Defendant knew it was storing sensitive PII and PHI that would be an attractive ongoing target for cybercriminals.

32.     Defendant also knew that a breach of its systems, and exposure of the PII and PHI stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII and PHI was compromised, as well as intrusion into their highly private financial information.

33.     Despite its legal and equitable duties, Defendant failed to implement reasonable data security measures to protect Plaintiff's and Class Members' PII and PHI and ultimately allowed threat actors to breach its computer systems and exfiltrate Plaintiff's and Class Members' unencrypted PII and PHI stored therein.

34.     The type and breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and Class Members especially vulnerable to a lifetime of identity theft, tax fraud, credit and bank fraud, and more.

### C.      *Healthcare Organizations Are Frequent Target for Cybercriminals.*

35.     Defendant was undoubtably a target due to its status as a healthcare entity that collects, creates, and maintains PII and PHI.

36.     Healthcare organizations have become a main target for cybercriminals because they "hold a massive amount of patient data — including medical records, financial information, Social Security numbers, names and addresses."[13]

---

[13] Elise Takahama, *Why health care has become a top target for cybercriminals*, THE SEATTLE TIMES (Feb. 25, 2024), https://www.seattletimes.com/seattle-news/health/why-health-care-has-become-a-top-target-for-cybercriminals/ (last accessed 7/30/2026).

37. In the context of data breaches, healthcare is a profoundly affected industry sector. Further, cybersecurity breaches in the healthcare industry are particularly devastating, given the fact that healthcare providers maintain highly sensitive and detailed PII and PHI. [14]

38. Notably, in February 2023, Lehigh Valley Health Network, a Pennsylvania-based healthcare system, experienced a data breach that resulted in the exposure of the PII and PHI of over 134,000 patients and employees.

39. Despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' PII and PHI from disclosure.

40. Defendant failed to properly train its employees as to cybersecurity best practices and to maintain proper staffing and processes for responding to and preventing network intrusions.

41. Defendant failed to implement sufficient processes to quickly detect and respond to data breaches, security incidents, or intrusions.

42. Defendant failed to encrypt Plaintiff's and Class Members' Private Information and monitor user behavior and activity to identify possible threats.

43. Defendant failed to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information of Plaintiff and Class Members.

44. Defendant failed to timely and accurately disclose that Plaintiff's and Class Members' Private Information had been improperly acquired or accessed.

45. And Defendant knowingly disregarded standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured Private Information.

---

[14] *See id*.

**D.**    ***Defendant Failed to Comply with FTC Guidelines***

46.    Despite its alleged commitments to securing sensitive data, Defendant failed to follow FTC guidelines.

47.    The Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") prohibits businesses from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for sensitive personal information is an "unfair practice" in violation of the FTC Act.

48.    Accordingly, the FTC advises that data security considerations should be factored into all business decision-making.[15] To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII and PHI.

49.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[16] The guidelines explain that businesses should:

      a.    protect the personal customer information that they keep;

      b.    properly dispose of personal information that is no longer needed;

      c.    encrypt information stored on computer networks;

      d.    understand their network's vulnerabilities; and

---

[15] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/business-guidance/resources/start-security-guide-business (last accessed July 30, 2026).

[16] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed July 30, 2026).

      e.   implement policies to correct security problems.

50.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach. [17]

51.     The FTC recommends that businesses limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures. [18]

52.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

53.     These FTC enforcement actions include those against healthcare providers and partners like Defendant. *See, e.g.*, *In the Matter of Labmd, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

---

[17] *See id*.
[18] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/business-guidance/resources/start-security-guide-business (last accessed July 30, 2026).

54.     Defendant failed to properly implement basic data security practices and provide timely notice to the individuals whose personal information was compromised in the Data Breach, despite its knowledge of the incident and its obligations to safeguard such information.

55.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**E.     *Defendant Failed to Follow Industry Standards***

56.     Defendant failed to follow industry standard data security practices.

57.     Defendant was at all times fully aware of its obligations to Plaintiff and Class Members regarding their personal information and of the severe consequences that would result from its failure to take adequate measures to protect this information.

58.     Several minimal industry best-practices have been identified by healthcare entities like Defendant, including but not limited to: educating all employees on the risks of cyber-attacks; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

59.     Other standard best-practices used in the healthcare industry include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

60.     Upon information and belief, Defendant failed to meet the minimum standards for reasonable cybersecurity readiness.

61.      Defendant failed to comply with industry standards, thus opening the door to cybercriminals and the Data Breach.

### F.    *Defendant Violated HIPAA and HITECH*

62.      HIPAA circumscribes security provisions and data privacy responsibilities designed to keep medical information safe.  HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of PHI. [19]

63.      HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure confidentiality, integrity, and security of PII and PHI is properly maintained. [20]

64.      The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA.  Defendant's security failures include, but are not limited to:

- a.   Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

- b.   Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

- c.   Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

- d.   Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

---

[19] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[20] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

e.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.  Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.  Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.  Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.  Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

65.  Defendant acknowledges in its "HIPAA Notice of Privacy Practices" that it must follow Federal rules regarding health care privacy.[21]

66.  Defendant thus concedes that it must comply with HIPAA.  The Data Breach, however demonstrates that Defendant failed to comply with safeguards mandated by HIPAA regulations.

67.  Defendant is also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH").  *See* 42 U.S.C. § 17921; 45 C.F.R. § 160.103.

68.  Both HIPAA and HITECH obligate Defendant to follow reasonable security standards, respond to, contain, and mitigate security violations, and to protect against disclosure

---

[21] *See* https://www.devereux.org/site/SPageServer/?pagename=hipaa (last accessed July 30, 2026).

of sensitive Private Information.  *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); 45 C.F.R.

§ 164.530(f); 42 U.S.C. § 17902.

**G.      *Cyberattacks and Data Breaches Cause Disruption and Put Individuals at an Increased Risk of Fraud and Identity Theft.***

69.      Cyberattacks and data breaches at companies that store PII and PHI are especially

problematic because they negatively impact the overall daily lives of the affected individuals.

70.      The United States Government Accountability Office released a report in 2007

regarding data breaches ("GAO Report") noting that victims of identity theft will face "substantial

costs and time to repair the damage to their good name and credit record."[22]

71.      That is because every data breach victim is exposed to serious risks regardless of

the nature of the data. The reason criminals steal personally identifiable information is to monetize

it by selling the data on the black market to identity thieves who intend to extort and harass victims,

and steal victims' identities to engage in illegal financial transactions under the victims' names.

72.      Because a person's identity is akin to a puzzle, the more accurate pieces of data an

identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or

otherwise harass or track the victim. For example, armed with just a name and date of birth, a data

thief can utilize "social engineering" to obtain even more information about a victim's identity,

like a person's login credentials or Social Security number. Social engineering is a form of hacking

where a data thief uses previously acquired information to manipulate individuals into disclosing

additional confidential or personal information through means such as spam phone calls and text

messages or phishing emails.

---

[22] *See* https://www.gao.gov/products/gao-07-737 (last accessed July 30, 2026).

15

73.     Theft of PII and PHI is serious. The FTC warns consumers that identity thieves use Private Information to exhaust financial accounts, receive medical treatment, open new utility accounts, and incur charges and credit in a person's name.

74.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing freezes on their credit, and correcting their credit reports. [23]

75.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

76.     PII and PHI are valuable to identity thieves, and if they can access it, they will use it to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; and/or use the victim's information in the event of arrest or court action.

77.     Identity thieves can also use the victim's name and Social Security number to obtain government benefits or file a fraudulent tax return using the victim's information. Additionally, identity thieves may obtain employment using the victim's Social Security number,  rent a house, and/or receive medical services in the victim's name.

78.     Moreover, theft of PII and PHI is gravely serious because this information is an extremely valuable property right. Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase PII on the black

---

[23] *See* https://www.identitytheft.gov/Steps (last accessed July 30, 2026).

market to target-market their products and services to the physical maladies of data breach victims themselves.

79.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States. That loss is more certain when the disclosed information, like the Private Information disclosed in the Data Breach here, includes Social Security numbers.

80.     Social Security numbers are particularly sensitive pieces of personal information. For instance, with a stolen Social Security number, which is only one subset of the PII compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits. Identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may be undetected until debt collection calls commence months, or even years later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected because one was already filed on their behalf.

81.     An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as the credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new social security number.

82.     These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members.

17

83.     This Data Breach was financially motivated; the reason cybercriminals trouble themselves to target a cyberattack against companies like Defendant is to obtain monetizable Private Information to sell on the black market for the criminal activity described herein. This data demands a much higher price on the black market.

84.     Fraud and identity theft resulting from the Data Breach may go undetected until debt collection calls commence months, or even years later. As with income tax returns, an individual may not know that his or her social security number was used to file for unemployment benefits until law enforcement notified the individual's employer of the suspected fraud.

85.     Cybercriminals can post stolen PII on the cyber black market for years following a data breach. Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.

86.     It is within this context that Plaintiff and Class Members must now live with the knowledge that their PII is forever in cyberspace and taken by people willing to use the information for fraud, criminal purposes, or sale on the black market.

87.     Plaintiff and Class Members must now take the time and effort (and money) to mitigate the actual and potential impact of the Data Breach on their everyday life, including purchasing identity theft and credit monitoring services every year for the rest of their lives, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

88.     Moreover, Plaintiff and Class members have an interest in ensuring that their PII and PHI, which remain in the possession of Defendant, is protected from further public disclosure

by the implementation of industry standards and statutorily compliant security measures and safeguards. Defendant has shown itself to be wholly incapable of protecting Plaintiff's and Class Members' PII.

**H.    *Plaintiff's Experiences and Injuries Caused by the Data Breach***

89.    Plaintiff and Class Members are and/or were employees, clients, donors, payors, and business partners.

90.    Specifically, Plaintiff was employed by Devereux from 2015 to 2018.

91.    As a condition of employment and/or receiving health services from Defendant, Defendant required Plaintiff to provide their Private Information. Defendant currently retains all of Plaintiff's Private Information

92.    In such capacity, Plaintiff entrusted his Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep his Private Information confidential and secure from unauthorized access.

93.    In requiring and maintaining Plaintiff's PII and PHI for business purposes, Defendant expressly and impliedly promised, and assumed the duty, to act reasonably in its handling of his Private Information.

94.    Plaintiff only allowed Defendant to maintain, store, and use his PII and PHI because Plaintiff believed that Defendant would use basic security measures to protect this information, such as requiring passwords and multifactor authentication to access databases storing the PII and PHI.  Defendant retained Plaintiff's PII and PHI within its possession and control in its network(s) at the time of the Data Breach.

95.     However, Defendant failed its duty to take proper care of Plaintiff's PII and PHI, causing its unlawful exposure to and exfiltration by cybercriminals as a direct result of Defendant's inadequate security measures.

96.     Plaintiff is very careful about sharing his Private Information and has never knowingly transmitted unencrypted PII and PHI over the internet or any other unsecured source. Plaintiff stores any documents containing his sensitive Private Information in a secure location or destroys the documents.  Plaintiff chooses unique usernames and passwords for his various online accounts, changing and refreshing them as needed to ensure his information is as protected as it can be.  When it is available, Plaintiff uses two-factor or multifactor authentication to add an extra layer of security to his private information.

97.     As a result of the Data Breach, Defendant's misconduct caused Plaintiff significant injuries and harm, including emotional distress regarding the misuse and loss of the privacy of his PII and PHI, which is undoubtedly being sold on the Dark Web.

98.     Further, Plaintiff has suffered imminent and impending injury arising from the present and ongoing risk of fraud and identity theft, in addition to lost time, annoyance, interference, and inconvenience due to Defendant's inadequate cybersecurity.

99.     Plaintiff estimates that he has spent several hours responding to the Data Breach by researching the Data Breach, monitoring relevant accounts for suspicious activity, and fielding spam/phishing calls and texts.  Plaintiff continues to review his accounts for fraud.

100.    Additionally, Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII and PHI—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach.

101.    Future identity theft monitoring is reasonable and necessary, and such services will include future costs and expenses, as Plaintiff has a continuing interest in ensuring that his PII and PHI, which remain in Defendant's possession, are protected and safeguarded from future breaches.

102.    Additionally, Plaintiff must immediately devote time, energy, and money to: 1) closely monitor his Social Security and other benefits, bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than he already does; 3) screen and scrutinize more carefully phone calls, emails, and other communications to ensure that he is not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them. Plaintiff has taken or will be forced to take these measures to mitigate his damages from the Data Breach.

103.    Once PII and PHI are exposed, there is little that can be done to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff will need to maintain these heightened measures for years, and possibly for Plaintiff's entire life, as a result of Defendant's misconduct.

104.    Because of the Data Breach, Defendant inflicted injuries upon Plaintiff and Class Members. And Defendant has done little to provide Plaintiff and the Class Members with relief for the damages they suffered.

## CLASS ALLEGATIONS

105.    Plaintiff brings this Class Action on behalf of himself and on behalf of all others similarly situated pursuant to CPLR § 901, *et seq*. The "Class" that Plaintiff seeks to represent is defined as follows:

> **Class Definition.** All persons whose Private Information was maintained by Defendant and was compromised in the Data Breach.

21

106.    Excluded from the Class are Defendant, its subsidiaries and affiliates, officers, directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families, all judges assigned to hear any aspect of this litigation, their immediate family members; and those individuals who make a timely and effective election to be excluded from this matter using the correct protocol for opting out.

107.    The proposed Class definition is based on current information and may be modified as necessary during discovery or when moving for Class certification to reflect any new or changed facts.

108.    **Numerosity**: The Class likely includes thousands of members, with exact numbers and identities determinable from Defendant's records, including those related to the Data Breach.

109.    **Commonality**: This action involves common questions of law and fact that predominate over individual issues. These include whether Defendant:

   a) Failed to timely and adequately notify Plaintiff and Class Members of the Data Breach;

   b) Had a duty to protect their Private Information;

   c) Failed to safeguard Private Information adequately;

   d) Was negligent in handling Private Information;

   e) Violated laws by failing to notify of the breach;

   f) Failed to implement reasonable security procedures;

   g) Negligently caused the Data Breach;

   h) Entered into an implied contract and breached it;

   i) Was unjustly enriched;

22

j) Breached its fiduciary duty;

k) Should provide damages and/or injunctive relief.

110. **Typicality**: Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, inter alia, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class Members and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

111. **Adequacy of Representation**: Plaintiff is an adequate representative, with no conflicting interests. Plaintiff's claims align with those of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

112. **Superiority**: Class action is superior due to impracticality of individual litigation, offering economies of scale and uniform decision-making. It allows for efficient adjudication without unnecessary duplication of effort and expense. Class Action treatment is a superior approach for fair and efficient adjudication, enabling numerous Class Members to pursue common claims simultaneously. It prevents unnecessary duplication and allows for modest claims to be litigated efficiently, which would otherwise be economically impractical for individual Class Members.

113. **Manageability**: The litigation is manageable due to Defendant's uniform conduct and consistent legal provisions, ensuring consistent outcomes and avoiding unnecessary duplication. The prosecution of this lawsuit as a class action presents no significant manageability

issues.  Adequate notice can be provided to Class Members using information from Defendant's records.

114.    Key issues suitable for certification include:

a)    Whether Defendant failed to timely and adequately notify the Plaintiff and Class of the Data Breach;

b)    Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their private information;

c)    The reasonableness of Defendant's security measures in light of best practices recommended by data security experts;

d)    Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e)    Whether Defendant failed to take commercially reasonable steps to safeguard Plaintiff's and Class Members' private information; and

f)    Whether adherence to FTC data security recommendations, and measures recommended by data security experts, would have reasonably prevented the Data Breach.

115.    **Predominance:** Common questions of law and fact predominate over individual issues, as similar violations, practices, and injuries are involved.  Defendant's liability and damages are common to all Class Members. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

116.    **Injunctive Relief:** Injunctive relief is appropriate due to Defendant's actions affecting the Class generally.  Without a Class-wide injunction, Defendant may continue to fail

24

in securing Class Members' private information, fail to provide proper notification regarding the Data Breach, and act unlawfully as alleged.

117.    **Ascertainability:** Class Members are ascertainable based on objective criteria and can be identified through Defendant's records.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

118.    Plaintiff repeats and realleges the allegations above as if fully alleged herein.

119.    Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in safeguarding and protecting their PII and PHI in its possession, custody, and control.

120.    Defendant's duty to use reasonable care arose from several sources, including but not limited to those described herein.

121.    Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

122.    Defendant had a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

123.    Defendant knew or should have known of the risk inherent in collecting the PII and PHI of Plaintiff and Class Members and the importance of having adequate security.

124.    Defendant owed a duty of care to Plaintiff and Class Members whose PII and PHI were entrusted to it. Defendant's duties included, but were not limited, to the following:

25

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting PII and PHI in its possession;

b. To protect patients' PII and PHI using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of PII and PHI in its possession;

d. To employ reasonable security measures and otherwise protect Private Information of Plaintiff and Class Members pursuant to HIPAA and the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

125.    Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

126.    Further, Defendant's duty arose because Defendant was bound by industry standards to protect its patients' confidential Private Information.

127.    Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care.

128.    Upon information and belief, Defendant, through its actions and omissions, breached its duty of care to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding their Private Information within Defendant's possession, including

26

failing to use reasonable measures to prevent unauthorized access, detect the Data Breach in a timely manner, and provide prompt notice so affected individuals could mitigate the resulting harm.

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' PII and PHI;

e. Failing to comply with the FTCA;

f. Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

g. Failing to timely and adequately notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages

129. Upon information and belief, Defendant acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt individual notice of the Data Breach so that Plaintiff and Class Members could take effective measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

130. Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' entrusting Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the Private Information stored) from attack.

27

131.    Defendant's breach of its duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

132.    Defendant's breach of its duties also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, and loss of control over their Private Information. Defendant's negligence placed Plaintiff and Class Members in danger of imminent harm that their Private Information, which upon information and belief, is still in the possession of third parties, will be used for fraudulent purposes.

133.    Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' PII and PHI and promptly notify them about the Data Breach.

134.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

135.    The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

136.    Plaintiff and Class Member have suffered injuries and are entitled to damages in an account to be proven at trial.

137.    In addition to monetary relief, Plaintiff and Class Member are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

## COUNT II
## NEGLIGENCE *PER SE*
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

138.    Plaintiff repeats and realleges the allegations above as if fully alleged herein.

139.    Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

140.    Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect Private Information, contrary to industry standards and FTC guidelines. This conduct was particularly unreasonable given the nature and amount of Private Information involved.

141.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have been caused to suffer and will continue to suffer the continued risks of exposure of their Private Information, which the Defendant still possesses, and may result in further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

142.    Plaintiff repeats and re-alleges the allegations above as if fully alleged herein.

143.    When Plaintiff and Class Members provided their Private Information to Defendant for healthcare services/employment, they entered into an implied contract with Defendant that Defendant will protect their Private Information.

144. Defendant required, offered, and induced Plaintiff and Class Members to provide their Private Information in Defendant's regular course business to obtain Defendant's services.

145. Plaintiff and Class Members thereby accepted and provided the required Private Information to Defendant to obtain healthcare services.

146. In entering into such agreements with Defendant, Plaintiff and Class Members reasonably believed and expected Defendant's data security practices to be compliant with relevant laws and regulations and consistent with industry standards given the value of Private Information.

147. Plaintiff and Class Members provided Private Information to Defendant with the reasonable belief and expectation that Defendant would obtain adequate data security.

148. Defendant failed to obtain adequate data security.

149. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them for Defendant to keep their information reasonably secure.

150. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

151. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

152. Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

153. As a direct and proximate result of Defendant's breach of the contracts implied, Class Members sustained damages, including the loss of the benefit of the bargain.

154. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach in breach of contract.

155. Plaintiff and Class Members are entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## COUNT IV
## UNJUST ENRICHMENT
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

156. Plaintiff repeats and re-alleges the allegations above as if fully alleged herein.

157. This Count is pleaded in the alternative to Count III.

158. Plaintiff and Class Members conferred a benefit on Defendant by entrusting their Private Information to it and by paying for healthcare services that should have included cybersecurity measures sufficient to protect that Private Information. Plaintiff and Class Members did not receive such protection.

159. Upon information and belief, Defendant funds its data-security measures entirely from its general revenue, including the payments made to it by Plaintiff and Class Members.

160. Accordingly, a portion of the payments made by Plaintiff and Class Members was to be used to provide a reasonable and adequate level of data security in compliance with applicable state and federal regulations and industry standards, and the amount of each payment allocated to data security is known to Defendant.

161. Defendant has retained the benefits of its unlawful conduct, including those portions of the payments received from Plaintiff and Class Members that should have funded the adequate cybersecurity practices Defendant failed to provide.

162.    Upon information and belief, Defendant knew that Plaintiff and Class Members conferred a benefit upon it, and Defendant accepted that benefit. Defendant profited from these transactions and used Plaintiff's and Class Members' Private Information for its business purposes; while failing to apply the payments it received toward adequate data-security measures that would have secured that Private Information and prevented the Data Breach.

163.    Had Plaintiff and Class Members known that Defendant had not adequately secured their Private Information, they would not have agreed to provide it to Defendant.

164.    In light of Defendant's conduct alleged herein, it would be unjust and inequitable to permit Defendant to retain the benefit of its wrongful conduct.

165.    Upon information and belief, and as a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered, or remain at a continued and imminent risk of suffering, injury including, without limitation: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, or theft of their Private Information; (iv) out-of-pocket expenses associated with preventing, detecting, and recovering from identity theft and the unauthorized use of their Private Information; (v) lost opportunity costs and lost productivity arising from efforts to address and mitigate the actual and future consequences of the Data Breach, including time spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and subject to further unauthorized disclosure for so long as Defendant fails to undertake adequate measures to protect the Private Information in its continued possession; and (vii) future costs in time, effort, and money that will be expended to prevent, detect, contest, and repair the consequences of the Data Breach for the remainder of Plaintiff's and Class Members' lives.

166.    Plaintiff and Class Members are entitled to full refunds, restitution, or damages from Defendant, or to an order proportionally disgorging all profits, benefits, and other compensation Defendant obtained through its wrongful conduct, including through the imposition of a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

167.    Plaintiff and Class Members may lack an adequate remedy at law against Defendant and therefore plead this claim for unjust enrichment in addition to, or in the alternative to, the other claims pleaded herein.

**COUNT V**
**BREACH OF CONFIDENCE**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

168.    Plaintiff repeats and re-alleges the allegations above as if fully alleged herein.

169.    Defendant's actions constituted an intrusion into Plaintiff's and Class Members' seclusion. By failing to safeguard their Private Information and misusing or disclosing it to unauthorized parties, Defendant invaded their privacy in a manner that would be highly offensive to an ordinary person. This invasion included publicizing private facts and causing significant anguish or suffering.

170.    At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' Private Information that Plaintiff and Class Members entrusted to Defendant.

171.    As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by terms and expectations that Plaintiff's and the Class Members' Private Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

172.    Given the foreseeability of harms from data breaches and their widespread occurrence, it was substantially certain that Defendant's failure to implement adequate cybersecurity would lead to an invasion of Plaintiff's privacy resulting in a breach of confidence.

173.    Defendant knew that an ordinary person would find the exposure of their own PII highly objectionable. By misusing and disclosing Private Information without consent, Defendant invaded Plaintiff's and Class Members' right to maintain the confidentiality in their Private Information.

174.    Defendant also concealed and delayed reporting the Data Breach without consent.

175.    Upon information and belief, Defendant's failure to implement reasonable cybersecurity safeguards led to the publication of Plaintiff's and Class Members' Private Information on the dark web and through other channels, further exacerbating the invasion of their Private Information.

176.    As a direct and proximate result of Defendant's breach of its confidence with Plaintiff and the Class, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) identity theft; (ii) the loss of the opportunity how their PII and PHI are used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant

34

fails to undertake appropriate and adequate measures to protect the Private Information of current and former people; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

177. As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT VI
## DECLARATORY JUDGMENT
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

178. Plaintiff repeats and re-alleges the allegations above as if fully alleged herein.

179. Pursuant to its authority under CPLR § 3001, this Court should enter a judgment declaring the rights and legal relations of the parties and to grant such further relief as may be necessary. The Court likewise has broad authority to restrain tortious conduct and conduct that violates the laws and regulations described in this Complaint.

180. Defendant owes a duty of care to Plaintiff and Class Members that requires it to adequately secure their Private Information.

181. Defendant remains in possession of Plaintiff's and Class Members' Private Information.

182. Plaintiff alleges that Defendant's data-security measures remain inadequate. Plaintiff continues to suffer injury from the disclosure of their Private Information, and the risk of further future disclosures persists.

35

183.    Plaintiff requests that this Court enter a judgment declaring, among other things, that:

a.  Defendant owes a legal duty to secure its patients' Private Information and to timely notify them of a data breach under the common law, HIPAA, and the FTC Act;

b.  Defendant's existing security measures do not comply with its express or implied contractual obligations or its duties of care to provide reasonable security procedures and practices appropriate to protect its patients' Private Information; and

c.  Defendant continues to breach this legal duty by failing to employ reasonable measures to secure its patients' Private Information.

184.    Plaintiff further requests that this Court issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect its patients' PII and PHI, including an order:

a.  requiring Defendant to provide lifetime credit monitoring and identity-theft insurance to Plaintiff and Class Members; and

b.  requiring Defendant, in order to comply with its express or implied contractual obligations and duties of care, to implement and maintain reasonable security measures, including, without limitation:

c.  engaging third-party security auditors and penetration testers, as well as internal security personnel, to conduct periodic testing of Defendant's systems, including simulated attacks, penetration tests, and audits—and promptly correcting any problems or vulnerabilities those auditors identify;

d.  engaging third-party security auditors and internal personnel to run automated security monitoring;

36

e. auditing, testing, and training its security personnel on any new or modified procedures;

f. segmenting its user applications, including by implementing firewalls and access controls so that the compromise of one area does not permit intruders to access other portions of Defendant's systems;

g. conducting regular database scanning and security checks;

h. routinely and continually conducting internal training to instruct security personnel on how to identify, contain, and respond to a breach; and

i. meaningfully educating its patients about the threats to the security of their PII and PHI and the steps they should take to protect themselves.

185.    Absent an injunction, Plaintiff will suffer irreparable injury and will lack an adequate remedy at law to prevent another data breach at Defendant. The risk of another breach is real, immediate, and substantial. Should another breach occur, Plaintiff will have no adequate remedy at law because many of the resulting injuries are not readily quantifiable.

186.    The hardship to Plaintiff if an injunction does not issue outweighs any hardship to Defendant. Plaintiff will likely be subjected to substantial and continuing identity theft and related damages absent an injunction. By contrast, the cost of Defendant's compliance with an injunction requiring reasonable prospective data-security measures is relatively minimal, and Defendant already bears a preexisting legal obligation to employ such measures.

187.    Issuance of the requested injunction will not disserve the public interest. To the contrary, it would serve the public by preventing a subsequent data breach at Defendant and avert future injury to Plaintiff and the other patients whose Private Information would otherwise be further compromised.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands relief as follows:

a)  An Order certifying this action as a Class action and appointing Plaintiff as a Class Representative and Plaintiff's counsel as Class Counsel;

b)  Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class members;

c)  Equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the Private Information compromised during the Data Breach;

d)  Equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e)  Ordering Defendant to pay for not less than six years of credit monitoring services for Plaintiff and the Class;

f)  An award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g)  An award of punitive damages, as allowed by law;

h)  An award of attorneys' fees and costs, and any other expenses, including expert witness fees;

i)  Pre- and post-judgment interest on any amounts awarded; and

j)  Such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all claims so triable.

Dated: July 31, 2026

/s/ *Mark C. Rifkin*

Mark C. Rifkin
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Ave
New York, NY 10016
Telephone: (212) 545-4600
rifkin@whafh.com

Rachele R. Byrd (*pro hac vice forthcoming*)
Stephanie Aviles (*pro hac vice forthcoming*)
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
byrd@whafh.com
saviles@whafh.com

James F. Woods, Esq. (*pro hac vice forthcoming*)
Annie E. Causey, Esq. (*pro hac vice forthcoming*)
Olivia E. Pizzo, Esq. (*pro hac vice forthcoming*)
**WOODS LONERGAN PLLC**
60 East 42nd Street, Suite 1410
New York, NY 10165
Tel.: (212) 684-2500
jwoods@woodslaw.com
acausey@woodslaw.com
oliviapizzo@woodslaw.com

*Attorneys for Plaintiff*